UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>AMY WINSLOW, and<br>MOHAMMAD HOSSEIN MALEKNIA, and<br>REBA DAOUST,<br><br>Defendants. | Case No. 1:23-cr-10094-PBS<br><br>Leave to File Granted on 3/4/2025 |

**DEFENDANTS WINSLOW AND MALEKNIA'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE IMPROPER LAY WITNESS TESTIMONY**

The government's ongoing failure to properly disclose expert testimony has severely prejudiced Defendants Amy Winslow and Mohammad Hossein Maleknia's (together, the "Defendants") ability to prepare their trial defense, and the government should be precluded from eliciting inadequately disclosed and undisclosed expert testimony. Still, the government has failed to comply with its disclosure obligations pursuant to Federal Rule of Evidence 702 and Rule 16 of the Federal Rules of Criminal Procedure. First, the government has failed entirely to meet the Rule 16 disclosure requirements for two categories of witnesses from whom it intends to elicit expert testimony: (1) Magellan's internal employees, scientists, and outside consultants and (2) physicians.[1]  Second,

---

[1] The government asserts that it does not intend to elicit expert testimony from FDA witnesses other than Dr. Lias. Dkt. No. 242 at 9. Therefore, should the government attempt to elicit specialized scientific or technical testimony from those FDA witnesses who were not disclosed as experts, it should be prohibited from doing so. For example, in its Opposition to the Defendants' Motion *in Limine* to Preclude the Government from Offering Exhibits that Include Inadmissible Hearsay and are Irrelevant (Dkt. No. 231), the government states that it intends to elicit testimony from FDA employees regarding "what is contained in the documents found in the inspection" of Magellan. *Id.* at 2–3. To the extent that testimony requires an FDA employee to interpret

even if the government's disclosures were adequate, it is going back on its word about the scope of such testimony. Specifically, when the Defendants raised concerns that the government intended to elicit expert testimony from physicians who had not been disclosed as experts, the government represented to the Defendants and this Court that it would not elicit causation testimony from doctors. *See, e.g.*, Feb. 10, 2025 *Daubert* Tr. at 86. But the government's briefing in opposition to two of the Defendants' motions *in limine* (Dkt. Nos. 241, 242) contradict those prior, on-the-record representations. It is now clear that the government intends to elicit improper expert testimony from physicians, including causation testimony. *See e.g.*, Dkt. No. 241 at 5-6 & n.5.

At this stage, the Court must preclude the government from eliciting expert opinions from witnesses who have not been fully and properly disclosed, as that is the only way to protect the Defendants' rights so close to trial. Accordingly, the Court should prohibit the government from eliciting technical and scientific testimony from Magellan employees, scientists, and consultants, and from eliciting testimony on causation and hypothetical treatment scenarios from physicians.[2]

1. <u>The Government's Failure to Comply with its Disclosure Obligations Should Preclude it from Eliciting Undisclosed Expert Testimony.</u>

As the government acknowledges, on January 23, 2025, the Court instructed it to provide any additional expert disclosures by February 7, 2025. Dkt. No. 242 at 4. In response, the

---

Magellan's internal tests, such as VP 113, that testimony requires highly specialized knowledge, and cannot be offered unless disclosed pursuant to the Rules and the Court's Orders. *Cf.* Ex. A to Dkt. No. 220 at 91–92 (Jan. 23, 2025 *Daubert* Hearing Tr. in which the Court recognized that reading and interpreting the results in Magellan's internal studies "would involve some level of technical expertise"). The government has not made the required expert disclosure, and so it cannot elicit such testimony.

[2] As set forth in the Defendants' motion *in limine* to preclude improper lay testimony (Dkt. No. 220), the physician witnesses included on the government's witness list are as follows: (1) Dr. Lauren Conca; (2) Dr. Nancy Dronen; (3) Dr. Jeremy Warhaftig; (4) Dr. Alan Woolf; and (5) Dr. Mona Hanna-Attisha.

government produced résumés for four former Magellan employees and consultants—Rosemary Feeney, Susan Garramone, Mike West, and Jan Krouwer.  To date, the government has failed to meet the disclosure requirements under Rule 16 for any Magellan employees, scientists, or consultants from whom it intends to elicit expert testimony.  And, as discussed further in Section 2 below, the government has similarly failed to meet expert disclosure requirements for any treating physicians.  Namely, aside from disclosures for Dr. Lias and Dr. Ettinger, the government has never produced a "complete statement of all opinions that [it] will elicit from the witnesses in its case-in-chief," or the "bases and reasons" for those opinions.  *See* Fed. R. Crim. P. 16(a)(1)(G)(iii).  Further, given the other witnesses' disclosures do not exist, they certainly are not signed.  *Id.* at (a)(1)(G)(v).  Without a signed disclosure, an expert witness has freedom to testify without being limited to properly disclosed and tested opinions, and the opposing party has no opportunity to adequately prepare a rigorous cross-examination, or to provide rebuttal expert testimony.  *See, e.g., U.S. v. Rivera-Rios,* 2008 WL 11453684, at *1 (D.P.R. Apr. 24, 2008) (limiting expert testimony to only what the government shared in signed disclosure prior to trial). This requirement is not a technicality.  Here, it would require the former Magellan employees and consultants to approve and acknowledge opinions that they knew in 2013 that LeadCare Ultra and LeadCare II were malfunctioning and yet they did nothing to prevent their sale and use.  In other words, a signed disclosure by a former Magellan employee will implicate him or her personally and directly in an alleged conspiracy to defraud the FDA and Magellan's customers—something that none of the witnesses have done.

The government maintains that it has satisfied its disclosure obligations by providing grand jury transcripts and memoranda of interviews ("MOIs") for each of the four Magellan witnesses. But those materials do not satisfy the government's burden because (1) they do not specify which

3

opinions the government will elicit from the witnesses, (2) they do not provide a sufficient basis to understand whether the opinions are factually supported or reliable, and (3) they are not signed and approved by the witness. And what the government has disclosed from those witnesses' prior statements is riddled with conclusions lacking support. For example, the government produced seven different MOIs and two days' worth of grand jury transcripts for witness Rose Feeney, Magellan's former Research & Development Manager. Across that volume, Ms. Feeney offered a host of scientific and technical opinions and conclusions (many under apparent pressure from the government) without explaining her bases or factual support. *See*, *e.g.*, Ex. C to Dkt. No. 220 (Ms. Feeney testified before the grand jury that there was "excessive bias" in a particular scientific study, without explaining the basis or providing factual support for that opinion or explaining what she meant by "excessive").

Because the government has avoided its disclosure obligations by relying on its production of interview reports and grand jury testimony, the Defendants are in the dark about what specific opinions the government intends to elicit at trial. The Defendants have also been denied an opportunity to challenge the witnesses' opinions, bases, and qualifications through *Daubert*. Contrary to the government's claim, the Court has not considered or rejected the Defendants' claims of prejudice. *Contra* Dkt. No. 242 at *6. Indeed, prejudice to the Defendants has intensified after the government failed to comply with the Court's express direction to fulfill all of its disclosure obligations. This prejudice can only be remedied by an order precluding the government from eliciting scientific and technical testimony from and non-disclosed experts, including, but not limited to, testimony by Magellan employees requiring scientific interpretation of Magellan's internal tests.

2. <u>The Government Should be Precluded from Eliciting Expert Testimony Regarding Causation and Hypothetical Treatment Scenarios from Lay Witness Physicians.</u>

The Defendants moved to preclude the government from eliciting causation testimony from lay physician witnesses out of an abundance of caution. *See* Dkt. No. 220. Although the government prompted that testimony in interviews, it assured the Defendants and the Court that it would not elicit that testimony at trial, *see, e.g.*, Ex. A to Dkt. No. 220 at 80 (Jan. 23, 2025 *Daubert* Hearing Tr.), and the Court cautioned the government that such testimony would not be permitted, *id.* at 100–01. But in opposition to the Defendants' motion *in limine* to preclude evidence of patient medical conditions (Dkt. No. 215), the government reversed course and suggested that it intends to elicit causation testimony from undisclosed experts. Dkt. No. 241 at 5 n.5 ("[T]here is nothing improper about general witness testimony regarding the adverse health consequences **caused** by lead exposure." (emphasis added)). That is expert testimony within the purview of Rule 702. Therefore, the Court should preclude the government from eliciting that testimony under Rule 701(c).[3]

The government has claimed that "[t]here can be no real dispute that lead exposure can cause adverse health consequences." *See, e.g.*, Dkt. No. 242 at 6. But the fact that lead exposure could cause some adverse health consequences as a general matter does not mean lead exposure caused a particular behavioral or developmental disorder in a specific patient. The issue is that the government intends to elicit testimony about **which** health consequences are caused by lead and **how** (*i.e.* what level of lead exposure, for how long, can cause a certain health consequence) at the same time they will seek to elicit testimony about children with lead poisoning diagnoses. *See* Dkt. No. 241 at 5–6 & n.5 (stating that the government will elicit testimony from Dr. Dronen that,

---

[3] The Defendants incorporate by reference their briefing in support of the motion to preclude patient medical condition testimony. *See* Dkt. No. 215.

but for the alleged Malfunction, "the harm *caused by* [her patient]'s prolonged lead exposure could have been addressed earlier" and that her patient's "blood lead level might never have reached the dangerously toxic level that it did") (emphasis added)). That is expert causation testimony, pure and simple, and it is precisely the sort of undisclosed expert testimony that the Court repeatedly warned it will not allow the government to elicit from physicians. *See, e.g.*, Ex. A to Dkt. No. 220 at 100–01 (Jan. 23, 2025 *Daubert* Hearing Tr. in which the Court stated, "certainly there will be no causation testimony permitted because [the physicians] weren't designated as experts"). The government cites no case law to support the argument that the "general" causation testimony it seeks to elicit is lay testimony based on knowledge that can be acquired through standard on-the-job experience by an average person. *See United States v. Vega*, 813 F.3d 386, 394–95 (1st Cir. 2016) (setting forth the standard for lay testimony). Rather, the proposed testimony is specialized, scientific testimony that Rule 701(c) prohibits from a lay witness.

The government has not disclosed the bases for any physician opinions, what studies or evidence (if any) they may be relying upon, whether they can or have ruled out other causes, and whether their opinions are well-accepted within the medical community. And, because the government has not complied with its disclosure obligations, the Defendants and the Court have not had a sufficient opportunity to assess whether that testimony is admissible and reliable, which is the basis for the Rule 702 requirements the government flouts.

Perhaps recognizing that there is no good argument that the physicians' testimony about causation and hypothetical treatment scenarios qualifies as lay testimony, the government spends most of its Opposition arguing that the testimony it wants to elicit is "critical to materiality." Dkt.

No. 242 at 7–8.[4]  The importance of the testimony to the government's case has no bearing on whether it is permissible under the Rules of Evidence.  If the government believed this specialized, scientific testimony was necessary to its case, it could have complied with its obligation to disclose the experts and their opinions by the Court-ordered deadline.  It did not do so.  As a result, the Court should enforce Rule 701(c) and preclude the government from eliciting testimony regarding causation or hypothetical treatment scenarios from physician lay witnesses.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Defendants' opening brief in support of their motion *in limine*, the Defendants respectfully request that the Court grant their motion and preclude the government from eliciting undisclosed expert testimony from lay witnesses that is scientific, technical, based upon the witness's specialized knowledge or otherwise exceeds the permissible scope of lay testimony under Federal Rule of Evidence 701(c).

---

[4] To the extent the government argues that this testimony is "critical to materiality," that issue is addressed in the Defendants' Reply In Support of Motion *in Limine* to Preclude Evidence Regarding Patient Medical Conditions, filed herewith.  The subject of this motion is the government's inability to elicit expert testimony from lay witnesses under Federal Rule of Evidence 701(c) and the government's failure to properly disclose the physicians as expert witnesses.

Dated: March 4, 2025

Respectfully submitted,

AMY WINSLOW,

By her attorneys,

/s/ *William J. Trach*
William J. Trach (BBO# 661401)
Nathan A. Sandals (BBO# 696032)
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
william.trach@lw.com
nathan.sandals@lw.com

Terra Reynolds (*pro hac vice*)
Latham & Watkins LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
terra.reynolds@lw.com

MOHAMMAD HOSSEIN MALEKNIA,

By his attorneys,

/s/ *George W. Vien*
George W. Vien (BBO #547411)
Michelle R. Pascucci (BBO #690889)
Emma Notis-McConarty (BBO# 696405)
Donnelly, Conroy, and Gelhaar LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Telephone: 617-720-2880
gwv@dcglaw.com
mrp@dcglaw.com
enm@dcglaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on March 4, 2025.

                                                  */s/ William J. Trach*
                                                  William J. Trach